# Wheeling.

## BANK OF THE OHIO VALLEY v. LOCKWOOD, *et al.*

### Decided July 6, 1878.

1878
June Term.

1. Where a promissory note is endorsed for the accommodation of the maker, and such note is payable, when so endorsed, at the banking house of Hoge, Sheets & Co., Bellaire, Ohio; and, after the endorsement and delivery by such endorsers of said note to the maker, the words "Hoge, Sheets & Co., Bellaire, Ohio" were erased, and the words "National Bank of West Virginia, at Wheeling," were inserted in the body of said note; and as a part thereof, without the knowledge or consent of two said endorsers or either of them; and said note, after its alteration as aforesaid, was discounted to and at the Bank of the Ohio Valley (plaintiff), at the instance and by the procurement of such maker, who received the proceeds, such note, as to the said two endorsers, who did not consent to such alteration, is not valid or binding in the hands of the plaintiff, but is valid and binding at least upon the said maker of the note, and may be enforced against him by suit.

2. On the 21st day of June, 1876, the Bank of the Ohio Valley, brought its action of assumpsit in the Municipal court of Wheeling against E. M. Bell, M. M. Fowler, Jonathan H. Lockwood, John Ferguson and George Edwards. The writ in the cause was returned, duly executed upon the defendants. Lockwood and Edwards; and the suit, under and by virtue of the return of the proper officer made upon the writ, was properly discontinued as to all the other defendants. The suit is founded upon a promissory note in the words and figures following, viz:

"$425.00. WHEELING, W. VA., February 4, 1876.

Four months after date, I promise to pay to the order of

M. M. Fowler four hundred and twenty-five dollars, value received, negotiable and payable at the Bank of the Ohio Valley.

. "E. M. BELL."

Endorsed on the back of said note "M. M. Fowler," "J. H. Lockwood," "John Ferguson," "George Edwards." The plaintiff's declaration, filed in the cause, is in the usual form in assumpsit, against the maker and several endorsers of said note. It avers a demand of payment of said note, at the place of payment at maturity, and its dishonor, and protest, and due notice to the several endorsers. The said defendants, Lockwood and Edwards, appeared to the declaration, and filed a plea of *non assumpsit*, upon which issue was joined, and also filed a special plea in writing, as follows, viz : "George Edwards and J. H. Lockwood, two of the defendants, and who were served with process in this cause, say, that the plaintiff ought not further to have or maintain its aforesaid action thereof against them, the said defendants, for this, because they say, that heretofore, to-wit : on or about the 28th day of May, 1875, E. M. Bell made and signed his certain negotiable promissory note, in the words and figures following, to-wit:

' "BELLAIRE, OHIO, May 28, 1875.

" 'Four months after date, I promise to pay to the order of M. M. Fowler four hundred and twenty-five dollars, value received, negotiable and payable at the banking house of Hoge, Sheets & Co., Bellaire, Ohio.

"(Signed.) . 'E. M. BELL.'

"That said defendants and others were applied to by said Bell the maker of said note, to endorse the same, and did so, in the following order: first, John Ferguson; second, J. H. Lockwood; third, M. M. Fowler; fourth, George Edwards; and delivered the said note to the said Bell, the maker thereof, endorsed as aforesaid; that said note, although payable to M. M. Fowler, one of the endorsers, was purely an accommodation note for the benefit of said E. M. Bell; that the endorsers, thereon, all and singular, never had any interest in said note, nor the proceeds thereof; that after the endorsement and delivery of said note aforesaid to said Bell, a material change was made in said note, in this : the words 'Hoge, Sheets & Co., Bellaire, Ohio," were erased, and the words 'National Bank of West Virginia,' at Wheeling,' were inserted in the body of said note, and as a part thereof, without defendants' knowledge, assent or consent to such alteration of said note, and said note after its alteration as aforesaid was discounted to and at plaintiff's bank, at the instance and by the procurement of said Bell, the maker thereof, who received the proceeds of the same, that after-

wards, on the 1st day of October, 1875, said E. M. Bell made and signed a new note, in the words and figures following, to-wit :

"'WHEELING, October 1, 1875.

"'Four months after date, I promise to pay to the order of M. M. Fowler four hundred and twenty-five dollars, negotiable and payable at the Bank of the Ohio Valley, at Wheeling.
"(Signed.)                                    'E. M. BELL.'

"That afterwards, upon the maturity of said last note on or about the 4th day of February, 1876, said Bell made and signed his certain other note, now in suit in this cause, payable to the order of M. M. Fowler, for the sum of $425.00, negotiable and payable at the 'Bank of the Ohio Valley,' at Wheeling ; and that Messrs. Ferguson, Fowler and these defendants were endorsers thereon on both of said notes but they aver the truth to be, that said two last notes of October 1, 1875, and February 4, 1876, were renewals of the note of May 28, 1875, which was, when endorsed by these defendants, payable at the banking house of Hoge, Sheets & Co., in Bellaire, in the State of Ohio ; that defendants, at the time of the endorsement of the two last notes, had no knowledge, of any kind, of the alteration of said note of May 28, 1875, nor had they any such knowledge, until after the commencement of this suit ; that no new consideration ever was received by these defendants, or either of them, from plaintiff, or any other person, for said two renewed notes ; that by reason of the alteration as aforesaid of said original note of May 28, 1875, there was a total failure of consideration for said two notes of October 1, 1875, and February 4, 1876, of $425.00 each, which were made in renewal of said original note of May 28, 1875, for the sum of $425.00, and negotiable and payable at the banking house of Hoge, Sheets & Co., at Bellaire, Ohio ; and this they are ready to verify. Whereupon they pray judgment, if the plaintiff ought further to have or maintain their said action thereon.
                                              "HOLLIDAY,
                                    "*For Defendants.*"

"STATE OF WEST VIRGINIA,
          "*Marshall County, ss :*

"George Edwards and J. H. Lockwood, two of the defendants in the above cause, personally appeared before me, the undersigned, in said county, and on oath say, that the allegations above set forth, in so far as they are stated upon their own knowledge, are true, and in so far as stated upon information derived from others, they believe them to be true.

"Given under my hand, this 12th day of August, 1875.
                                    "R. G. HOLLIDAY,
                                         "*Notary Public.*"

To which said special plea the plaintiff demurred, and the said defendants joined therein. The court below sustained said demurrer to said special plea. HELD:

I. That the court below did not err in sustaining the demurrer to said plea, for the reason that taking the allegations and statements of said plea to be true, the defense therein set up, or attempted to be set up, against the plaintiff's demand and claim, in his declaration mentioned, is not good and sufficient, waiving all objection thereto for want of some proper averments and allegations, so as to make the plea complete and sufficient, if the defense set up, or attempted to be set up, in said, plea was a good and sufficient defense in law.

II. That under the statements and allegations of said plea the plaintiff, according to the allegations and averments of said plea, was a *bona fide* holder for value of the said note in suit, and as such entitled to protection under the rule in relation to negotiable paper; and that, according to the face of said plea, the plaintiff, at the time of the execution and delivery of said note, had a right of action against the maker of said altered note at least; and as to him said altered note was valid and binding; that the giving of each of the two last notes, in said special plea mentioned, to the plaintiff in renewal of said altered note, and the acceptance of the same, according to the allegations of said plea, operated a suspension of the right of the plaintiff to sue the maker of said altered note, as to whom at least it was valid, and binding, until the note, so given in renewal, matured and was dishonored; and that such forbearance, or suspension of the plaintiff's right to sue the maker of said altered note, was a consideration, deemed valuable in law, given by the plaintiff for each of said notes, so given in renewal, and the plaintiff, under the allegations and averments of said special plea, is a *bona fide* holder of the note in suit for value, and as such is entitled to protection under said rule, and is entitled to recover the amount of said note in suit from the said defendants, Edwards and Lockwood.

3. It appears by the record, that after this cause had been submitted to the court, after it had orally delivered its opinion, that judgment should be rendered for the plaintiff, but before any judgment or order had been entered, the said two defendants having requested, that the entry of the judgment order might be delayed, until they could prepare their bills of exceptions and the court having granted such delay, and while the defendants were preparing their exceptions, and after one day

1878
June Term.

Bank of Ohio
Valley
v.
Lockwood et al.

had elapsed, the defendants having made a motion for a new trial, and the court having orally announced its opinion, that the same shall be overruled, but no judgment, order or motion for a new trial, or order overruling the same, having been entered, the plaintiff offered in evidence the paper hereinafter inserted, and the court received the same, to be considered in evidence on the trial of this cause. The said paper is in the words and figures following, to-wit : (See certificate of corporation.) Afterwards the defendants, by George O. Davenport, one of their counsel, asked the court to grant a new trial, and to continue the cause, as new testimony had been received; but the court overruled the motion to grant a new trial and to continue the cause. To all of which proceedings, the admitting the testimony, its competency, and the refusal of the court to grant a new trial and to continue the cause, the defendants excepted and asked the court to sign their bill of exceptions No. 3, and to make it a part of the record. HELD :

I. For reasons stated in the opinion of the court, that there is no error in the said rulings and action of the court in the premises.

II. That according to the ruling in the case of *Merchants and Mechanics Bank of Wheeling* v. *Evans & Dewey*, 9 W. Va. 273; the defense attempted to be set up in said special plea, if good in law, shows, that the plaintiff never had any cause of action against said defendants, Edwards and Lockwood, and it was competent for the said defendants to give the same in evidence under the plea of *non assumpsit*, which was filed in the cause, and on which issue was joined; and that the said defendants were not prejudiced by the judgment of the court sustaining the demurrer to said plea, especially as this Court sees by the certificate of the facts found in the cause, that said defendants, after the demurrer to said special plea was sustained by the court under the general issue, were allowed and permitted without objection to give in evidence the defense, attemped to be set up in said special plea, and had the full benefit thereof, such as it was, at the trial before the court, the finding and judgment of the court upon the facts certified being right and proper. (See facts stated in the opinion in the cause.)

Appeal from, and *supersedeas* to, a judgment of the Municipal court of Wheeling, rendered on the 10th day of January, 1877, in a cause in said court then pending, wherein the Bank of the Ohio Valley was plaintiff, and

J. H. Lockwood and others were defendants, allowed on on the petition of said defendants.

Hon. G. L. Cranmer, Judge of the Municipal court of Wheeling, rendered the judgment appealed from.

The facts sufficiently appear in the opinion of the court.

*Holliday & Son,* for plaintiffs in error, cited the following authorities:

46 Mo. 591; 43 Me. 511; 49 Ala. 219; 6 Wall. 80; 22 Mich. 427; 112 Mass. 315; 19 Johns. 391; 46 N. Y. 34; 32 Ala. 430; 3 Barb. 374; 32 Ind. 202; 6 Yerg. 387; 2 Humph. 195; 2 Head 273; 9 A. & E. 96; 13 M. & W. 778; 4 T. R. 320, 346; 1 Allen 477; *Id.* 661; 2 C. M. & R. 291; Sm. Lead. Ca. 934; 1 Parson's Con. 367, note C. and cases cited; *Id.* 215, 216; 25 Gratt. 336; 8 W. Va. 551, 552; 1 Am. Lead. Ca. 595; 27 Iowa 420; 27 Penn. 391; 6 Wall, 80; 20 Iowa 542; 79 Penn. St. 80; 9 Gratt. 83, 84; 24 Law T. R. 34; 26 Gratt. 122; 17 Wend. 238; 56 N. Y. 22-31; 34 Ill. 100; 4 Ohio St. 60; 2 Parson's Notes and Bills 573 and notes; 119 Mass. 269, and cases cited.

*Caldwell & Caldwell,* for defendant in error, relied on the following authorities:

9 W. Va. 373; 47 Barb. 159; 5 Rand. 132; 14 Johns. 245; 5 Metc. (Mass.) 429; 1 Hill (S. C.) 404; 2 Bailey 179; 2 Gra. & Wat. on New Trials 676, 677.

HAYMOND, JUDGE, delivered the opinion of the Court:

This is an action of trespass on the case in assumpsit, brought by the plaintiff against E. M. Bell, M. M. Fowler, Jonathan H. Lockwood, John Ferguson and George Edwards, in the municipal court of Wheeling, on the 21st day of June, 1876. The writ, issued in the case, was made

returnable to the second Monday in July, 1876, and was returned, duly executed upon the defendants, Lockwood and Edwards. As to the defendants, E. M. Bell, M. M. Fowler and John Ferguson, the officer returned, that they were not inhabitants of his bailiwick, nor found therein. At July rules, 1876, of said court the plaintiff filed its declaration in the cause, to which no demurrer was filed, or exceptions taken in the court below, nor has any objection been taken, or made, before this court to the declaration, for insufficiency or otherwise.

The declaration contains but one count, which is based upon a negotiable promissory note, which was dishonored and protested, and is as follows, viz :

" $425.00.    WHEELING, W. VA., February 4, 1876.

" Four months after date, I promise to pay to the order of M. M. Fowler, four hundred and twenty-five dollars, value received, negotiable and payable at the Bank of the Ohio Valley.

                                " E. M. BELL."

The note was endorsed by the following persons in the order they are herein named, viz :  " M. M. Fowler," " J. H. Lockwood," " John Ferguson," " George Edwards."

The declaration is in the usual form in such cases. It alleges the making of the note by said E. M. Bell to M. M. Fowler, and the endorsement and delivery thereof by said Fowler to Jonathan H. Lockwood ; and the endorsement and delivery thereof by said Lockwood to John Ferguson; and the endorsement and delivery thereof by said Ferguson to George Edwards ; and the endorsement and delivery thereof by said Edwards to the plaintiff.

The declaration also alleges, that when said note became due and payable, according to its tenor and effect, to-wit: on the 7th day of June, 1876, at the Bank of the Ohio Valley, where the same was payable, and at said city, the said note was duly presented and shown for

payment thereof, and payment of the sum of money therein specified was then and there duly required, according to the tenor and effect of the said note, but that neither the said E. M. Bell, the maker of said note, nor any person or persons, did, or would, at the said time, when the said promissory note was presented and shown for payment thereof as aforesaid, or at any time before or afterwards, pay the said sum of money therein specified, or any part thereof, but wholly neglected and refused so to do; whereupon the said promissory note was then and there, to-wit, on the day and year last aforesaid, duly and legally protested for non-payment; the charges of which amount to $2.02, of all which and especially of said demand, non-payment and protest of said note the said defendants, M. M. Fowler, Jonathan H. Lockwood, John Ferguson and George Edwards, endorsers of said note, had due, legal and timely notice &c.

At August rules, 1876, the cause was discontinued as to E. M. Bell, M. M. Fowler and John Ferguson, by reason of the said return of the officer made on the writ as to them, and as to the said defendants Lockwood and Edwards, a common order was taken against them, they being served. It further appears by the same, that at the same rules the defendants, Edwards and Lockwood, appeared in the clerk's office, and " offered to file their special plea in writing, and the plaintiff objected to the same being filed; but the plea was filed by the clerk; and the plaintiff demurs to the same, in which the defendants, Edwards and Lockwood, joined;" and the said defendants, at the same time, " pleaded, that they did not assume upon themselves, in manner and form as the plaintiff, in its declaration against them has alleged; and of this they put themselves upon the country, and the plaintiff doth the like, which special plea was in the words and figures following, to-wit:

" *Bank of the Ohio Valley* v. *J. H. Lockwood, George Edwards and others*—In Assumpsit. Filed at August rules.

" George Edwards and J. H. Lockwood, two of the defendants, and who were served with process in this cause, say, that the plaintiff ought not further to have or maintain its aforesaid action thereof against them, the said defendants, for this : Because, they say, that heretofore, to-wit, on or about the 28th day of May, 1875, E. M. Bell made and signed his certain negotiable promissory note, in the words and figures following, to-wit :

" 'BELLAIRE, OHIO, May 28, 1875.

" 'Four months after date, I promise to pay to the order of M. M. Fowler four hundred and twenty-five dollars, value received, negotiable and payable at the banking house of Hoge, Sheets & Co., Bellaire, Ohio.

(Signed)                          ' E. M. BELL.'

" That said defendant and others were applied to by said Bell, the maker of said note, to endorse the same, and did so, in the following order: first, John Ferguson ; second, J. H. Lockwood ; third, M. M. Fowler ; fourth, George Edwards—and delivered the said note to the said Bell, the maker thereof, endorsed as aforesaid ; that said note, although payable to M. M. Fowler, one of the endorsers, was purely an accommodation note for the benefit of said E. M. Bell ; that the endorsers thereon, all and singular, never had any interest in said note, nor the proceeds thereof; that after the endorsement and delivery of said note as aforesaid to said Bell, a material change was made in said note, in this : the words 'Hoge, Sheets & Co., Bellaire, Ohio,' were erased, and the words ' National Bank of West Virginia, at Wheeling,' were inserted in the body of said note, and as a part thereof, without defendants' knowledge, assent or consent to such alteration of said note ; and said note, after its alteration as aforesaid, was discounted to and at plaintiff's bank at the instance and by the procurement of said Bell, the maker thereof, who received the proceeds of the same ; that afterwards, on the 1st day of

October, 1875, said E. M. Bell made and signed a new note, in the words and figures following, to-wit:

" 'WHEELING, October 1, 1875.

" ' Four months after date, I promise to pay to the order of M. M. Fowler four hundred and twenty-five dollars, negotiable and payable at the Bank of the Ohio Valley, at Wheeling.

" (Signed)                                   ' E. M. BELL.'

" That afterwards, upon the maturity of said last note, on or about the 4th day of February, 1876, said Bell made and signed his certain other note, now in suit in this cause, payable to the order of M. M. Fowler, for the sum of four hundred and twenty-five dollars, negotiable and payable at the 'Bank of the Ohio Valley,' at Wheeling, and that Messrs. Ferguson, Fowler and these defendants were endorsers thereon on both of said notes ; but they aver the truth to be, that said two last notes of October 1, 1875, and February 4, 1876, were renewals of the note of May 28, 1875, which was, when endorsed by these defendants, payable at the banking house of Hoge, Sheets & Co., in Bellaire, in the State of Ohio ; that defendants at the time of the endorsement of the two last notes, had no knowledge, of any kind, of the alteration of said note of May 28, 1875, nor had they any such knowledge, until after the commencement of this suit ; that no new consideration ever was received by these defendants, or either of them, from plaintiff, or any other person, for said two renewed notes ; that by reason of the alteration as aforesaid of said original note of May 28, 1875, there was a total failure of consideration for said two notes of October 1, 1875, and February 4, 1876, of $425.00 each, which were made in renewal of said original note of May 28, 1875, for the sum of $425.00, and negotiable and payable at the banking house of Hoge, Sheets & Co., at Bellaire, Ohio ; and this they are ready to verify. Whereupon they pray

judgment, if the plaintiff ought further to have or maintain its said action thereon.

" HOLLIDAY,
" *For Defendants.*

" STATE OF WEST VIRGINIA,
" *Marshall County, ss :*

" George Edwards and J. H. Lockwood, two of the defendants in the above cause, personally appeared before me, the undersigned, in said county, and on oath say that the allegations above set forth, in so far as they are stated upon their own knowledge, are true, and in so far as stated upon information derived from others, they believe them to be true.

" Given under my hand, this 12th day of August, 1875.

" R. G. HOLLIDAY,
" *Notary Public.*"

It further appears that afterwards, on the 25th day of August, 1876, at a session of said municipal court, by consent of parties, the cause was continued until the next term of said court. And on the 13th day of October, 1876, of said court, the cause was continued until the next term. It further appears, that on the 25th day of November, 1876, at a term of said court the plaintiff, and defendants, Edwards and Lockwood, appeared in court, by their attorneys, and " the plaintiff moved the court to set aside the proceedings had at August rules, 1876, as to the special plea then filed, except the offer to file the same, and objection thereto, and to sustain its objection then made, and now insisted upon, to the filing by the two last named defendants of their said special plea in writing, which motion is overruled, and the plaintiff's demurrer to said special plea was thereupon heard, and having been argued by counsel, and considered by the court, the said demurrer is sustained, and the case continued."

Afterwards, at a session of said court held on the 2d

day of January, 1877, it appears, that the parties, by their attorneys, appeared in court; "and thereupon, neither party requiring a jury, but both parties assenting, that the court should try the issues joined, the court proceeded, in lieu of a jury, to try the issues joined, and the evidence and arguments of counsel being fully heard, the court not being fully advised of its judgment," took until a future day to consider thereof.   Afterwards, at a session of said court held on the 10th day of January, 1877, the court rendered judgment in the cause in favor of the plaintiff, against the defendants, George Edwards and Jonathan H. Lockwood, for the sum of $435.57, aggregate amount of its damages, in the declaration mentioned, to the 6th day of January, 1877, and with interest on said sum from said last named date, and the plaintiff's costs.

It further appears by the record, that at the trial of the cause the defendants, Edwards and Lockwood, filed three several bills of exceptions numbered respectively, No. 1, No. 2, and No. 3, and asked, that the same be signed, sealed and made a part of the record in the case, which was accordingly done.   The said defendant's bill of exceptions No. 1, is as follows, viz:

" Be it remembered, that upon the trial of this case, the plaintiff, to maintain the issue on its behalf, offered the note, marked E, and certificate of protest thereof in evidence, and also evidence tending to prove, that by a clerical mistake of the notary, who signed and sealed said protest, that the words ' do solemnly protest against the drawer and endorser ' were placed in said certificate instead of the words ' do solemnly protest against the drawer and endorsers ;' that said protest was made by said notary against the drawer and endorsers, June 7, 1876, and the endorsers were duly notified of the presentment, dishonor and protest of said note, as mentioned in said certificate, by notice—one notice mailed to each of them at the postoffice in the city of Wheeling, West Virginia, June 7, 1876, addressed to said en-

dorsers at Moundsville, West Virginia, postage prepaid; and that Moundsville, West Virginia, was the postoffice then of all of said endorsers; that said note was in the words and figures following:

"'$425.00.          WHEELING, W. VA., Feb. 4, 1876.

"'Four months after date, I promise to pay to the order of M. M. Fowler four hundred and twenty-five dollars, value received, negotiable and payable at the Bank of the Ohio Valley.

'E. M. BELL.'

"Endorsed on the back of said note—M. M. Fowler, J. H. Lockwood, John Ferguson and Geo. Edwards.

"And said certificate was in the words and figures following:

"'UNITED STATES OF AMERICA,  ⎫
"'WHEELING, OHIO COUNTY, W. VA.  ⎬

"'Be it known, That on the date hereof, I, James P. Adams, notary public for the county of Ohio, in the State of West Virginia, residing in the city of Wheeling, by lawful authority duly commissioned and qualified, at the request of Bank of the Ohio Valley, the holder of the original note—a copy of which is written below—did present the said original note at Bank of the Ohio Valley and demanded payment thereof, the time limited for payment having expired to which demand I was answered 'no funds.' Whereupon I, the said notary, at the request aforesaid, have protested, and by these presents do solemnly protest against the drawer and endorser of the said original note, and all others, whom it doth or may concern, for all costs, exchange, re-exchange, charges, damages and interest suffered and to be suffered for want of payment thereof, of which presentment, dishonor and protest I duly notified the endorsers. Thus done and protested at Wheeling aforesaid, this 7th day of June, 1876.

"'In testimony whereof, I have hereunto set my hand and affixed my seal notarial the day and year aforesaid.

"'JAMES P. ADAMS,

"[Notarial seal.]          "'Notary Public.'

" 'Tax on seal, 50 cents; protesting, $1.00; notices, 40 cents; postage, 12 cents; total, $2.02. '

" 'NOTE.

" '425.00.          WHEELING, W. VA., Feb. 4, 1876.

" 'Four months after date, I promise to pay to the order of M. M. Fowler four hundred and twenty-five dollars, value received, negotiable and payable at the Bank of the Ohio Valley.

" 'E. M. BELL '

" 'Endorsed on back of protest—M. M. Fowler, J. H. Lockwood, John Ferguson and George Edwards.'

" And that James P. Adams was then a notary public, duly qualified, for Ohio county, West Virginia, residing in said county. Whereupon, to the introduction of the said note and certificate, and each of them, the defendants objected, but the court overruled the objection and admitted the said note and certificate of protest in evidence, to which the defendant excepted, and prayed the court to sign this their bill of exceptions No. 1, which is done accordingly.

" G. L. CRANMER, *Judge, &c.*   [SEAL.]"

Defendants, Edwards and Lockwood's bill of exceptions No. 2 is as follows, viz:

" *Be it remembered,* That this case came on to be further heard on the 30th day of December, A. D. 1876, upon the issue joined, upon the plea of *non assumpsit* filed therein at the August rules, 1876, by George Edwards and Jonathan H. Lockwood, the two defendants, who were served with process in said case, and who appeared and made defense therein, and by consent of parties a jury was waived, and all questions, both of law and fact, arising upon said issue were submitted to the judgment and determination of the judge of said court, in lieu of a jury, and judgment upon their verdict; and upon the trial of said issue, the following facts were proven, the same being all the facts proven on said trial;

1878
June Term.

Bank of Ohio
Valley
v.
Lockwood *et al.*

that the note sued upon, marked E, and its endorsements, were and are in the words and figures following, to-wit:

" '$425.00.          WHEELING, W. VA., Feb. 4, 1876.

" 'Four months after date, I promise to pay to the order of M. M. Fowler four hundred and twenty-five dollars, value received, negotiable and payable at the Bank of the Ohio Valley.

"  'E. M. BELL.'

" Endorsed on the back of said note—M. M. Fowler, J. H. Lockwood, John Ferguson and George Edwards.

" That said note was protested at plaintiff's request, on the 7th day of June, 1876, by James P. Adams, a notary public in and for Ohio county, West Virginia, residing in said county, against the drawers and endorsers of said note for non-payment thereof; that the post-office address of all the defendants was at that time Moundsville, West Virginia; and on said day last named the said notary mailed at the post-office at the city of Wheeling, West Virginia, due notice of the dishonor and protest, and of the presentment, as hereinafter stated, of said note, postage prepaid, and directed—one notice to each of the endorsers on the note—to Moundsville, West Virginia; that on January 7, 1876, and from that time until and at the time of said trial, the Bank of the Ohio Valley was the owner and holder of the said note, and the plaintiff produced the same in evidence at the trial; that on June 7, 1876, at the request of the plaintiff, the said bank, the then holder of said note, the said notary did present said note at said bank's banking house and place of business, which was in Wheeling aforesaid, and demanded payment thereof of M. A. Chandler, the cashier of the bank at that time, and was answered to said demand by the cashier, ' no funds.' Whereupon the said notary protested the said note as aforesaid, and as set forth in the certificate of protest hereinafter inserted, and drew up and signed and sealed said certificate, in the words and figures following, to-wit:

" 'UNITED STATES OF AMERICA, &#125;
" 'WHEELING, OHIO COUNTY, W. VA. &#125;

" '*Be it known*, That on the date hereof, I, James P. Adams, notary public for the county of Ohio, in the State of West Virginia, residing in the city of Wheeling, by lawful authority duly commissioned and qualified, at the request of Bank of the Ohio Valley, the holder of the original note, a copy of which is written below, did present the said original note at Bank of the Ohio Valley, and demanded payment thereof, the time limited for payment having expired, to which demand I was answered "no funds." Whereupon I, the said notary, at the request aforesaid,. have protested, and by these presents do solemnly protest against the drawer and endorser of the said original note, and all others whom it doth or may concern, for all costs, exchange, re-exchange, charges, damages and interest suffered and to be suffered for want of payment thereof, of which presentment, dishonor and protest I duly notified the endorsers. Thus done and protested at Wheeling, aforesaid this 7th day of June, 1876.

" 'In testimony whereof, 1 have hereunto set my hand and affixed my seal notarial the day and year aforesaid.

" 'JAMES P. ADAMS.
" '*Notary Public.*

" '[Notarial seal.]

" 'Tax on seal, 50; protesting, $1.00; notices, 40; postage, 12; total, $2.02.

"(Endorsed.)

" '$425.00.                                              1541.

" 'WHEELING, W. VA., February 4, 1876.

" 'Four months after date, I promise to pay to the order of M. M. Fowler four hundred and twenty-five dollars, value received, negotiable and payable at the Bank of the Ohio Valley.

" 'E. M. BELL.'

" 'Endorsed—M. M. Fowler, J. H. Lockwood, John Ferguson, George Edwards.

" 'Note of E. M. Bell, amount............................$ 425 00
Costs..................................... ..................... 2 02

Total........................................................ $427 02

" 'Endorsed—M. M. Fowler, J. H. Lockwood, John Ferguson George Edwards.

" 'JAMES P. ADAMS,
" '*Notary Public.*'

"That the legal costs of said protest were $2.02, and were paid by the bank; that by a clerical mistake the said certificate was drawn to read 'do solemnly protest, against the drawer and endorser,' when the word 'endorser' should have been 'endorsers;' that the note was protested against the endorsers; that M. A. Chandler was cashier of the Bank of Ohio Valley during the month of June, 1875, and from that time till and after June 7, 1876, and acted as such at said bank's place of business, in the city of Wheeling, during such time; that on June 2, 1875, E. M. Bell, the maker of the note marked A. applied to said cashier, at said bank, to discount that note, that said note was in the words and figures following, to-wit:

" '$425.00        BELLAIRE, OHIO, May 28, 1875.

"Four months after date, I promise to pay to the order of M. M. Fowler four hundred and twenty-five dollars, value received, negotiable and payable at the banking house of National Bank of West Virginia, at Wheelling.

" 'E. M. BELL.'

"Endorsed on the back of said note—John Ferguson, J. H. Lockwood, M. M. Fowler and George Edwards.

"That said Bell was then unknown personally or by reputation to said Chandler; that said Chandler enquired about said Bell, and finding him favorably and satisfactorily spoken of, discounted the note marked A, on

June 3, 1875, and gave said Bell for it the check marked B, which was in the words and figures following, to-wit:

"'WHEELING, W. VA., June 3, 1875.

"'Bank of the Ohio Valley pay to E. M. Bell, or bearer, four hundred and thirteen dollars and fifty-five cents.

"'$413.55. CASHIER, &c.'

"Said check was presented by said Bell and paid in money at the Bank, on June 3, 1875, and stamped by the paying teller of the bank with the stamp of the bank as follows : Bank of the Ohio Valley, paid June 3, 1875, Wheeling, W. Va., E. M. Bell brought to the bank, and to its cashier there, the note marked C ; said note was in the words and figures following, to-wit:

"'$425.00. WHEELING, October 1, 1875.

"'Four months after date, I promise to pay to the order of M. M. Fowler four hundred and twenty-five dollars, negotiable and payable at the Bank of the Ohio Valley, at Wheeling.

"'ELI M. BELL.'

"Endorsed on the back—M. M. Fowler, J. H. Lockwood, John Ferguson and George Edwards.

"E. M. Bell desired the cashier to renew the note marked A. by taking in renewal the note marked C ; this the cashier refused to do. Said Bell went away and came to the bank with the president thereof, J. K. Botsford, to intercede for him ; the cashier refused to renew the old note marked A, but on the president's solicitation, consented that the bank should discount the new note marked C, which he did by giving E. M. Bell therefor the check marked D. Said check was in the words and figures following :

"'WHEELING, W. VA., October 2, 1875.

"'Bank of the Ohio Valley pay to Eli M. Bell, or bearer, four hundred and thirteen dollars and fifty-five cents.

"'$413.55. CASHIER, &c.'

"Endorsed on the back of said check—Bank of the Ohio Valley, paid October 2, 1875, Wheeling, W. Va.

"E. M. Bell took the check and $11.45 in money and paid therewith the note marked A, and received it from the receiving teller. When the note marked C came due the same was duly presented at said bank for payment, dishonored and protested, and the endorsers were duly notified. E. M. Bell brought the note marked E to the banking house of said bank, and to its cashier, February 4, 1876, and desired him to take it in renewal of note marked D, which the cashier refused to do. Said Bell then went away and early on the morning of February 5, 1876, returned with the president. The cashier refused to renew the note marked C, but on the intercession of the president, consented that the bank should discount the note marked E, which was done by giving to Bell therefor the check marked F, which was in the words and figures following, to-wit :

"'WHEELING, W. VA., February 5, 1876.

"'Bank of the Ohio Valley pay to E. M. Bell, four hundred and thirteen dollars and twenty-nine cents. $413.29.                                          CASHIER, &c.'

"Bell took said check to the receiving teller in the bank, and with it and $11.71 in money, paid the note marked C, and received the same from said teller, stamped with the stamp of the bank on the face thereof, as follows:  Bank of the Ohio Valley ; paid February 4, 1879, Wheeling, W. Va.  The said last mentioned check was stamped upon the back thereof with the stamp of the bank by the paying teller, as follows : 'Bank of the Ohio Valley, paid February 5, 1876, Wheeling, W. Va. ;' that the words stamped on the face of note marked C should have read February 5, 1876, but that the date in the stamp, by mistake had not been changed from February 4, 1876, to February 5, 1876, before stamping that note, although it was stamped on February 5, 1876 ;

that the custom was to change the date each morning from the date of the preceding day to the date of the change; that said checks were in the hand-writing of the book-keeper of the bank, and that such checks were known as cashier's checks and were frequently taken away from the bank, and afterwards came in from other banks, or were presented by business men, and in either case were paid by plaintiff's bank, and that they were good for the money mentioned in them when presented; that the receiving teller of the bank each time, when he received payment of the said two notes marked A and C, charged himself with $425.00 each time, which was the amount he received on his receiving-teller's cash-books kept by him as such in account with the bank, and in the evening of the same day of receipt of check and money to said amount for each note, turned said checks and money over to the paying teller of the bank, and credited himself on said cash-book by the checks, the amount thereof, and by cash amount of the money received, respectively, for said notes last mentioned; that the names purporting to be the signatures of the makers and endorsers on said three notes are their several signatures; that Jonathan H. Lockwood never received any notice of the note marked E; that the note marked A, when he and George Edwards endorsed the same, bore in large printed characters on the face thereof, the words, payable at Hoge, Sheets & Co.'s banking house, Bellaire, Ohio; that said note when offered for discount at plaintiff's bank, in Wheeling, had (3) three red lines with a pen run lengthwise through the words 'Hoge, Sheets & Co.'s banking house, Bellaire, Ohio,' but not concealing or obscuring the printing of those printed words, and above them was interlined 'National Bank of West Virginia, at Wheeling,' in writing; that said Chandler, the cashier, to whom it was offered, knew nothing about said note, or its existence, till so offered, and never knew, till after this suit was brought, that any alteration, after it was endorsed, was made or claimed to

have been made by the endorsers, or by any one ; that it was before that, and is, common for notes to be offered for discount, and discounted at banks, with the printed place of payment therein crossed out with ink, and a new place of payment interlined, and no subsequent trouble on account thereof; that the cashier made no enquiry at the time he discounted the note marked A, or at any time, as to whose authority such alteration was made by ; that neither said Lockwood nor said Edwards ever knew of said alteration until after the commencement of this action, and that neither of them ever consented to said alteration; that they endorsed said three notes for accommodation of the maker only, and without consideration from him.   It was proved, that the defendants, Lockwood and Edwards, endorsed notes marked respectively C and E at Moundsville, W. Va., upon E. M. Bell presenting them to said defendants, and telling them, that he desired them to endorse said notes to be used as renewals—the note marked C to be used as a renewal of note marked A, and the note marked E to be used as a renewal of the note marked C.   It was further proved that neither the plaintiff, nor its officers or agents, had any knowledge or notice until the trial of this cause of said notes marked C and E being endorsed by said two defendants, or either of them, to be used as renewal as aforesaid, nor as to how, or upon what consideration, or whether for accommodation, the endorsers were induced to endorse said notes marked C and E; that the plaintiff has been a corporation of the State of West Virginia since the 17th day of April, 1875, existing under the following charter, to-wit:

*Certificate of incorporation of the Bank of the Ohio Valley.*

" 'I, Charles Hedrick, Secretary of the State of West Virginia, hereby certify that an agreement, duly acknowledged and accompanied by the proper affidavits, has been this day delivered to me, which agreement is in the words and figures following:

" 'The undersigned hereby enter into articles of association, and agree to become a corporation by the name of the Bank of the Ohio Valley, for the purpose of carrying on the business of banking, and of exercising, under the laws of the State of West Virginia, all such incidental powers as shall be necessary to carry on said business, by discounting promissory notes, negotiating drafts, bills of exchange and other evidences of indebtedness, by receiving deposits, buying and selling exchange, bank notes, bullion or coin, and by loaning money on personal or other security, and by doing all things, authority for which can be obtained expressly or by implication from chapter 215 of the Acts of the Legislature of West Virginia, at its eleventh session, by a corporation organized under said chapter; and the said corporation shall be known in its dealings by said name, and is to expire on the 17th day of April A. D. 1895.

" 'For the purpose of forming the said corporation we have subscribed the sum of $30,000.00, the capital stock thereof, which is divided into three hundred shares, and have paid in on such subscriptions the sum of $3,000.00. The said bank is to be located in the city of Wheeling, in Ohio county, in the State of West Virginia. The capital subscribed is held as follows, that is to say: by George Adams, fifty shares; by John K. Botsford, fifty shares; by Jacob S. Rhodes, fifty shares; 'by William B. Simpson, fifty shares; by Henry M. Harper, fifty shares; and by William A. Turner, fifty shares. All the undersigned and above-mentioned share-holders are residents of the city of Wheeling, in the county of Ohio, and State of West Virginia. The maximum of additional shares which the undersigned may hereafter, from to time, desire to sell, is forty-seven hundred shares, of the par value of $100.00 each.

" 'We hereby declare that these articles are made to enable the undersigned to avail themselves of the advan-

tages of the said chapter of the Acts of the Legislature of the State of West Virginia.

' "Witness our hands and seals, this 17th day of April A. D. 1875.

| | |
|---|---|
| ' "GEORGE ADAMS, | [Seal.] |
| ' "J. K. BOTSFORD, | [Seal.] |
| ' "J. S. RHODES, | [Seal.] |
| ' "W. B. SIMPSON, | [Seal.] |
| ' "H. M. HARPER, | [Seal.] |
| ' "WILLIAM A. TURNER, | [Seal.] |

' "Wherefore, the corporators named in the said agreement, and who have signed the same, and their successors and assigns, are hereby declared to be, from this date until 17th day of April, 1895, a corporation by the name and for the purpose set forth in said agreement.

' "Given under my hand and the seal of the State, at the city of Charleston, this 21st day of April, 1875.

' "C. HEDRICK,
' "*Secretary of the State.*
"[Seal of said State.]"

' "WEST VIRGINIA,

' "*Ohio County, sct.:*

' "The foregoing certificate of incorporation was filed for record the 21st day of June, 1875.

' "Teste:

"ROBERT B. WOODS, *Clerk.*'

" And the court took time to consider its judgment in the premises, and afterwards, on the 10th day of January, A. D. 1877, and at the same term of said court, the court rendered final judgment for the plaintiff for $435.57, with interest till paid, from said date. To which judgment of said court in the premises, the defendants, Jonathan H. Lockwood and George Edwards aforesaid, then and there excepted, and tendered this bill of exceptions No. 2 to said judgment, and prayed that the same may be signed and sealed and made a part of

the record in this cause, which is here done this January 10th, 1877.

1878
June Term.

Bank of Ohio
Valley
v.
Lockwood et al.

"G. L. CRANMER, *Judge, &c.,* [SEAL.]"

Defendants Edwards and Lockwood's bill of exceptions No. 3, which is in the words and figures following, to-wit:

"*Bill of Exceptions No. 3.*

" BANK OF THE OHIO VALLEY ⎞
*vs.* ⎟
" EDWARDS AND LOCKWOOD. ⎠

" *Be it remembered,* That after this cause had been submitted to the court, and after it had orally delivered its opinion, that judgment should be rendered for the plaintiff, but before any judgment order had been entered, the said two defendants having requested, that the entry of the judgment order might be delayed, until they could prepare their bills of exceptions, and the court having granted such delay, and while the defendants were preparing their exceptions, and after one day had elapsed, the defendants having made a motion for a new trial, and the court having orally announced its opinion, that the same shall be overruled, but no judgment order or motion for a new trial or order overruling the same having been entered, the plaintiff offered in evidence the paper hereinafter inserted, and the court received the same, to be considered in evidence on the trial of this cause. The said paper is in the words and figures following, to-wit: (See certificate of incorporation.) Afterwards the defendants, by Geo. O. Davenport, one of their counsel, asked the court to grant a new trial, and to continue the cause, as new testimony had been received, but the court overruled the motion to grant a new trial and to continue the cause. To all of which proceedings, the admitting the testimony, its competency, and the refusal of the court to grant a new trial, and to continue the cause, the defendants excepted and asked the court to sign their bill of exceptions No. 3, and to make it a part of the record, which is accordingly done.

"G. L. CRANMER, *Judge, &c.* [SEAL.]"

To the judgment of the said municipal court, rendered in this cause in favor of the plaintiff against the said defendants, Edwards and Lockwood, they, said defendants, have obtained a *supersedeas* from this court; and in this way this cause is now before this court for review and determination.

The first error, assigned by said defendants in their petition for a *supersedeas* to said judgment of said municipal court is, that the court erred in sustaining the plaintiff's demurrer to the special plea.

Syllabus 1.

If this suit was based upon the first promissory note made and endorsed at Bellaire on the 28th day of May, 1875, as it was and read, when presented to and discounted by the plaintiff, as in said special plea stated, and the note, endorsed by them for the accommodation of the maker, was delivered to the maker for his benefit to raise money upon, (for that is the plain meaning of "endorsement for accommodation of the maker" ordinarily), and after the endorsement and delivery by the defendants of said note to the maker, and before the said note was presented to the plaintiff and discounted by it, the said note was altered, as in said plea is alleged without the consent thereto of the defendants, or either of them, then I apprehend such alteration released both of said defendants from liability to a recovery upon said note. But if such alteration was made under the circumstances, stated in said plea, with the consent of either of said defendants, then the defendant so consenting to such alteration would be liable for the amount of said note, with its proper interest and costs of protest, &c.

Mr. Parsons, in the second volume of his valuable work on "Notes and Bills," at page 565 says: "A material alteration in a note, or bill, made *by the consent* of all parties, is valid and binding. If a part assent thereto, those assenting are bound and the others discharged. This rule is most obviously just in principle, for *volenti non fit injuria;* but there is some difficulty in its application, on questions of evidence.

If the note be altered by consent of the signer, without the consent of the other, and be declared on as the joint note of both, the plaintiff may recover against one, and the other will recover his costs. Consent may be subsequent, as well as prior, to the alteration, since the parties must be as competent to alter their contract after it is made, as originally to make it. Consent to the alteration of a note may be implied, as well as express. It may be implied from the nature of the contract." In support of these propositions Mr. Parsons cites various cases, in a note at the bottom of said page 565.

In the case of *Wade* v. *John* A. *Wathington*, 1st Allen, (Mass.) at page 562, Judge Bigelow says: "On the contrary the well settled doctrine is, that a material alteration in a bill or note, after its execution and delivery to the payee, or after its endorsement, vitiates the instrument, except as against parties consenting to the alteration;" and he cites *Master* v. *Miller*, 4 T. R. 320, S. C., 2 H. Black 140 ; Chit. on Bills (8th ed) 204 ; *Davis* v. *Jenney*, 1 Met. 221 ; *Fay* v. *Smith*, 1 Allen (Mass) 477.

Judge Bigelow further adds: " This doctrine rests on the principle, that parties can be held liable only on their contracts, as originally made and entered into by them. The identity of the instrument with that, which was executed by the defendant, is an essential element in every action upon a written contract, from which his assent to its terms may be fairly presumed. If this is changed by a material alteration, without the privity of the party liable upon it, it ceases to be his contract. It is a mistake to suppose, that any different rule in this particular is applicable to promissory notes and bills of exchange, from that which governs deeds and other contracts ; the law, in giving peculiar sanction to negotiable paper, in order to secure its free circulation and to protect *bona fide* holders for value, who received it before its maturity, does not go to the extent of holding a party liable to a contract, into which he never entered, and to which he has not given his assent. The case of *Young*

v. *Grate*, 4 Bing. 253; *S. C.* 12 Moore, 484, on which the plaintiff relies, is very different from the case at bar. where the check was filled up by the agent of the drawer for a certain amount, and afterwards altered by him to a much larger sum, before it was passed into circulation or had become a binding contract in the hands of a *bona fide* holder. It was held, that the banker, who paid the check for the larger amount, had a right to retain against the drawer the full sum paid by him, because the check was drawn in so improper and careless a manner, as to enable an agent of the drawer to practice a fraud on an innocent party. This decision rests on the principle, that where one of two innocent parties is to bear a loss, it must fall on him, who employed a dishonest agent and carelessly furnished him with the means of committing a fraud. The same principle was recognized by this court in the early case of *Putnam* v. *Sullivan*, 4 Mass. 45, where endorsers were held liable on a promissory note, which they had left in blank with their clerk, and who had permitted the note to be filled up and put in circulation, for a purpose different from that, for which it was intrusted to his possession. These are cases, where parties have been held liable on a negotiable check and note fraudulently filled up and put in circulation by their agents, to whom they were entrusted with the signatures in blank. But they rest on a very different principle from that applicable to notes and bills, which have been fraudulently altered in material particulars by third persons, holding no relation of agency to the parties, and after they had been executed and delivered as binding contracts."

The syllabus of the case, from which the foregoing extract is, taken, is that "the fraudulent alteration of a promissory note, by the insertion of words, which make it appear to be for a greater sum than that, for which it was originally given, avoids the note in the hands of a *bona fide* endorsee for a valuable consideration, although the alteration could not be detected on a careful scrutiny."

The case was an action by the endorsee against the maker of a promissory note.

1878
June Term.

Bank of Ohio
Valley
v.
Lockwood *et al.*

In the case of *Fay et al.* v. *Webster Smith*, 1st Allen (Mass.) it was held, that " the alteration of a promissory note by the addition of the words ' with interest ' avoids the note, as to such promisors as do not consent thereto, although the alteration is made without fraudulent intent." This was a case of contract upon a promissory note, signed upon its face by H. M. Reed, bearing upon its back the name of the defendant, payable ten months from date to the order of Joshua Hobart, and endorsed by Hobart to the plaintiffs. Hoar, J. in delivering the opinion of the court says: "The defendant, not being named as a party to the note in suit, placed his name on the back of it, before it was delivered by the promissor, Reed, to the payee, and thereby, according to the settled law of Massachusetts, made himself jointly liable as an original promisor. The note, when he thus placed his name upon it, was not payable with interest; but the other promisor had agreed with the payee to give him a note bearing interest, and the words ' with interest ' were added by the procurement of the payee, and with the consent of Reed, but without the knowledge or authority of the defendant; and with this alteration the note was taken by the payee and endorsed to the plaintiffs. The plaintiffs contended at the trial, that, the alteration having been made without fraudulent intent, they should be allowed to recover upon the note, as it stood when the defendant signed it; and the presiding judge so ruled. But we are of opinion, that this ruling cannot be supported, and that the verdict must be set aside, and a new trial granted," &c.

In the case of *Waterman* v. *Vose et al.* 43, Me. 504, it was held that " the alteration of a note of hand by the maker, after it is endorsed by adding the words " with interest," is material, and if made without the consent of the endorser, he is not liable as such, although the alteration be made before delivery.

1878
June Term.

Bank of Ohio
Valley
v.
Lockwood et al.

In the same case at page 511 Judge Tenney in delivering the opinion of the court says: "The law carefully guards the rights of sureties upon an instrument, whether the relation to the principal is shown by his being surety in the technical sense of the term, endorser or otherwise. A promissory note, signed by principal and surety, or a note, or bill, endorsed for the accommodation of another party thereto, defines the liability intended to be assumed; any other action, changing his liability without his consent, will discharge him; such as the change of the date, the amount, the time or place of payment."

The same judge at page 512 says: "Where a person puts his name to paper, which is full in form, for a certain sum, payable at a certain time and place, for the accommodation of another, who is to become a party to the same, when it shall be negotiated, his liability is limited by the precise terms of that paper. An alteration afterwards, which is material, without his consent will make it a contract, which he never executed, and which it is manifest he never intended to execute; and it is a new contract, to which he can in no sense be treated as a party; and he cannot be bound by it. It has no analogy to the case, where one signs or endorses blank notes or bills, to be filled by the party to be accommodated, according to his discretion and supposed necessities." The Judge on same page refers to 2 Stark. Ev. 295 note (g), and says: "This note, in the abstract, would seem to support the instructions, which we are now considering. But the authority cited by Mr. Starkie will show, that the alteration was by the consent of the party attempted to be charged; and the defense, that the contract was void, was upon the ground, that every bill shall have a stamp, which was not upon the one in question after the alteration. But the court held, that the bill not having become effectual before the alteration, it was not thereby a new contract." The views of Judge Tenney, above expressed, seem to be substantially a correct statement of the law on the subject, to which it relates.

In *Britten* v. *Dierker*, 46 Missouri 591, it was held, that " the alteration in the date of a note vitiates it as to a surety, when the alteration is made without his consent. And it makes no difference, that the alteration was made by one of the makers prior to the delivery of the note." In this case, according to the statement of the Judge who delivered the opinion of the court, the evidence given on the trial of the cause tended to show, that the note sued on was executed on the part of the defendant as the surety of the other makers; that after the note was signed by him, and without his knowledge or consent, but while it remained in the hands of the other makers, the date of the note was changed from " October —, 1867 " to " November 17, 1867 ; " that such alteration was made prior to its delivery and without the privity of the plaintiff. The note was made payable to the order of the plaintiff six months after date.

In the case of *Woodworth* v. *The Bank of America* 19 Johns. 391, it was held, that, " every alteration of a note by the maker, in respect to the place of payment, or any alteration of the contract of the *endorser*, in a part which may, in any event, become material, without his approbation, discharges his liability."

In *Wood* v. *Steele*, 6th Wall. 80, it was held, that " the alteration of the date of any commercial paper,—though the alteration delay the time of payment, is a material alteration, and if made without the consent of the party sought to be charged, extinguishes his liability. The fact, that it was made by one of the parties signing the paper, before it had passed from his hand, does not alter the case as respects another party (a surety), who had signed previously."

In the case of *Masters et at.* v. *Miller*, 4 T. R. 320, it was held, that " an alteration of the date of a bill of exchange, after acceptance, whereby the payment would be accelerated, avoids the instrument; and no action can be afterwards brought upon it, even by an innocent holder for valuable consideration.

In *Draper* v. *Wood et al.* 112 Mass. 315, it was held, " that a material alteration of a note, made by one of the promisors before its delivery without the knowledge of the other promisor, makes the note void as against the other promisor; although the alteration is made without the knowledge of the payee and without fraudulent intent." In this case Wood, the promisor, who made the alteration, was defaulted.

In the case of *Holmes* v. *Trumper*, 22 Mich. 427, it was held, that " the alteration by the payee or subsequent holder of the promissory note, which consists of a printed blank with the time and place of payment and amount filled in with writing, by adding thereto after the printed words " with interest at," at the end of the instrument, the written words and figures "10 per cent," if made without the knowledge or consent of the maker, constitutes a valid defense in favor of the maker, even against a *bona fide* purchaser of the note, and renders the note void. In an action, brought upon such altered note, the maker cannot be held liable to pay the amount of the note as originally drawn." See also *Booth, survivor, etc.* v. *Daniel W. Powers, et al. Ex'rs, &c.*, 56, New York 22. As connected with the subject under consideration, see *Merrick* v. *Boury & Son*, 4 Ohio St. 60; *Vogle, et al.* v. *Ripper* 34, Ill. 100; *Spelter, Adm'r* v. *James et al.*, 32 Ind. 202; *Bruce, &c.* v. *Westcott*, 3 Barb. 374.

In the case of *Morehead* v. *Parkersburg National Bank*, 5 W. Va. 74, it was held that " a material alteration of a promissory note, without the knowledge or consent, either express or implied, of the promisors, vitiates it, although it may be in the hands of an innocent holder." Judge Maxwell, who delivered the opinion of the court in that case, at page 77, says : "A material alteration, without the assent of the party to be affected by it, renders the instrument void as to him," and he cites *Burham* v. *Ayer*, 35 N. H. 351; 2 Parsons on Notes and Bills, 544, and other authorities. See *Brown* v. *Reed*, 79 Penn.

370; *Bank of United States* v. *Russell & Boone*, 3 Yeates (Penn.) 391; Daniel, in second volume of his work on Negotiable Instruments, says, that it is a material alteration in a note or bill to obliterate one place of payment and insert another, and cites in notes at the bottom of the page various authorities.

The alteration I apprehend must be material ordinarily, especially if not made with a fraudulent intent, and even when made with a fraudulent intent, if the alteration be immaterial, there is a conflict of authority as to the effect of such alteration. 2 Parsons on Notes and Bills, 572 and note (l). In 1st vol. Smith's Leading cases by Hare & Wallace, top page 714 it is said : "As to Notes : It seems generally agreed, that an alteration, to avoid them, must be material." It seems from the second book, page 715, that " although a material alteration, made without the privity of the party claiming upon it, and after his title upon it has become vested and complete, will not discharge the liability of the maker of the note, yet care must be taken as to the mode of dealing, &c.

Mr. Parsons, in the second volume of his work on Notes and Bills, p. 444, says : "An alteration, to be material, must be of an essential stipulation of the note and not of a mere memorandum only endorsed thereon for convenience, as an ear mark. Thus a *memorandum* of a collateral agreement between maker and endorser, endorsed on a bill, is not a material alteration. The same is true of added words, which are senseless and inoperative, either for the injury or benefit of anybody, especially when the note or bill is complete in itself." *Granite Railway Co.* v. *Bacon*, 15 Pick. (Mass.) 239.

In the case of *McGrath* v. *Clark*, 56 New York 34, defendant endorsed a promissory note, with the time and place of payment in blank, and delivered the same to the maker, who filled the blanks and added the words, " with interest." *Held :* That while the delivery of the note to the maker gave him an implied authority to fill

the blanks, by inserting any time and place of payment he chose, it did not authorize the addition of the words, " with interest," and that this was a material alteration, which invalidated the note against the defendant, in the absence of proof of some authority therefor, aside from the delivery."

In *White* v. *Hass*, 32 Ala. 430, it was held, that "the alteration of a note after its delivery to the payee by the erasure of the place, at which it was made payable, is presumed to have been made by the payee; and unless the assent of the maker is proved, renders the note void."

"The defendants, Edwards and Lockwood, in the case before us, in their said special plea aver, that said note, after its alteration as aforesaid, was discounted to and at plaintiff's bank, at the instance and by the procurement of said Bell, the maker thereof, who received the proceeds of the same. This allegation admits and declares in substance and effect, that said alteration of the note was made by said Bell, the maker, or with his knowledge and consent, and that before delivery thereof to the plaintiff and before the same was discounted by the plaintiff, and that said Bell, the maker, delivered said note to the plaintiff, as it then appeared and as altered, as a genuine note, and received from the plaintiff. the proceeds of said note, so discounted by plaintiff. Taking the allegation of the plea as true in this respect, under the authorities I have cited, and on principle, Bell, the maker, was liable to be sued upon said altered note by the plaintiff after its maturity ; and, upon the state of facts alleged in the plea, the plaintiff would under the law have been entitled to recover the amount of said altered note from said Bell. Of this it appears to me there can be no question.

This suit, as we have seen, is founded upon the note of February 4, 1876, and the defendants, Edwards and Lockwood, aver in their said special plea, that the said last named note, and the note of October 1, 1875, were renewals of the said note of May 28, 1875, which was

then endorsed by them, payable at the banking house of Hoge, Sheets & Co, in Bellaire, in the State of Ohio; and that they, at the time of the endorsement of the two last notes, had no knowledge of any kind of alteration of said note of May 28, 1875, nor had they any such knowledge, until after the commencement of this suit; that no new consideration ever was was received by them, or either of them from plaintiff or any person, for said two renewed notes."

It seems to me, after an examination of a number of cases and general authorities bearing on the subject, that said special plea is insufficient in substance, and law; and that the said Municipal court did not err, in sustaining the plaintiff's demurrer to said special plea.

"By the rules of the common law no promise, which is not made for a consideration, can be enforced. This consideration may be either a gain, or benefit of any kind, to him, who makes the promise, or a loss or injury of any kind, suffered by him, to whom it is made; such gain being the cause of, or inducement to, the promise, and the promise being the cause of, or the inducement to, such loss." Parsons on Notes and Bills, vol. 1 ch. 6, sec. 1. p. 175. In the case of negotiable bills, and notes generally, a consideration is presumed between the immediate parties thereto; but this presumption may be rebutted by evidence; and proof, that there was no consideration in fact, will constitute a perfect defense;" But as to subsequent *bona fide* holders for value this presumption of consideration is conclusive. As to them, it is immaterial, whether there was any consideration between prior parties or not. "Therefore a maker cannot defend himself, on the ground that he promised without consideration, against the suit of an endorsee; nor can an endorser, against the suit of the endorsee of his endorsee. But a maker sued by the payee, or an endorser by his endorsee, or in general any promisor, sued by the party to whom he directly promises, may make this [defense." Parsons on Notes and Bills, vol. 1, pp. 175,

176 ; Daniel on Negotiable Instruments, vol. 1, chap. 7, pp. 126, 127, 128, 129, 130, 135 and cases there cited; Story on Promissory Notes (5th ed.) 210.

A defendant may, in general, make the defense of a want of consideration against a remote party, if he could have made it against a nearer party, and the nearest party took the paper from the nearer party with a knowledge, that it was open to this defense. But a very important exception to this rule prevails in the case of accommodation paper. The plain reason of this is, that the accommodation maker, acceptor, or endorser, intends to lend his credit, and does it as a favor to some party, who pays him nothing. This party therefore can never sue him ; or if he does, the want of consideration will be a perfect defense. But if this accommodated party uses the credit, he has borrowed, by selling the note or getting it discounted, the holder may say : " I bought the note, or discounted it, for the very reason that I knew you had lent your credit on it ; and I took it on the faith of your credit." We must therefore understand the legal definition of an accommodation party to negotiable paper to be, one who puts his name there without any consideration, with the intention of lending his credit to the accommodated party." Parsons on Bills and Notes, vol. pp. 183, 184; Story on Promissory Notes, 5th ed., 1. 217, 218 ; Daniel on Negotiable Instruments, 148, 149, 150.

We have seen however, that when said altered note matured, the plaintiff had a right of action against the maker of the note at bar ; and the two notes given in renewal thereof, as alleged in said plea, each operated at least a suspension of the debt evidenced by the original, and of the right to sue the maker thereof therefor, until the maturity and dishonor of such renewal note. Daniel on Negotiable Instruments, vol. 2, pp. 259, 260, 264 and authorities there cited.

As soon as the note, or bill given in renewal is dishonored, the original debt revives ; and the creditor may

pursue his remedy for it or sue upon the bill or note. The bill or note, taken in conditional payment, became by its dishonor a collateral security, which the creditor may retain, and endeavor to collect, without forfeiting the right to proceed in the principal cause of action, subject to the obligation of surrendering up the bill or note at the trial. 2d vol. Daniel on Negotiable Instruments, 264; *Lazier* v. *Nevin*, 3 W. Va. 622, 627, 628.

The said special plea substantially shows, that the plaintiff gave a consideration, deemed valuable in law, for the note given in renewal of the original altered note. By accepting the note, given in renewal, it gave extension of time at least to the maker of the original note, which time was until the maturity and dishonor of the note given in renewal. Or, in other words, the plaintiff by receiving said renewal note for a valuable consideration agreed to forbear to sue the maker of the original note, as well as any of the endorsers, as to whom the original altered note was valid and binding; and the plea fails to allege, that the alteration alleged was made without the knowledge or consent of the maker or of any of the endorsers, except Edwards and Lockwood.

An agreement to forbear for a time proceedings at law, or in equity, to enforce a well founded claim is a valid consideration for a promise. But this consideration fails, if it be shown, that the claim is wholly and certainly unsustainable at law or equity. "It is not material, that the party, who makes the promise in consideration of such forbearance, should have a direct interest in the suit to be forborne, or be directly benefited by the delay. It is enough, that he requests such forbearance; for the benefit of the defendant will be supposed to extend to him; and it would also be enough to make the consideration valid, that the creditor is injured by the delay. But there must have been some party, who could have been sued. And in cases, in which the person to be forborne is not mentioned, but the forbearance may be understood to be forbearance of who-

ever might be sued, the promise founded on such consideration is binding, if there be any person liable to suit, though the defendant himself is not liable. In general, the waiver of any legal right, at the request of another party, is a sufficient consideration for a promise; or the waiver of any equitable right." Parsons on Contracts, 1st vol. 5th Edition, 440, 443, 444 and cases there cited; 1st vol. 2d Ed. Parsons on Contracts, 366, 367, 368, 369, and cases there cited in notes; 2d Daniel on Negotiable Instruments 147; Parsons on Notes and Bills 198, 199.

Any damage to another, or suspension or forbearance of his right, is a foundation for an undertaking and will make it binding, though no actual benefit accrue to the party undertaking. 3 Burr 1673, and the opinion of Lord Ellenborough and the other judges in the case of *Jones* v. *Ashbarnham*, 4 East. 455, 463, 464, 465, 466: " Forbearance is not a good consideration for a promise, where there is no debt in existence ; but if one be liable for a debt, general promises by several, in consideration of forbearance, are good and will bind all. When there has been a contract with the principal for delay, upon which the surety might claim his discharge, if the principal and surety subsequently agree upon a general contract to forbear the collection of the debt for a certain period, such contract, in the absence of fraud, is upon good consideration, the principal being liable, and will bind the surety as well as the principal." *New Hampshire Savings Bank* v. *Coleved*, 15 N. H. 119. " When a party is in possession of a negotiable instrument, the presumption is, that he holds it for value ; and the burden of proof is upon him, who disputes it; an exception being, when the defect appears on the face of the instrument." *Goodman* v. *Simonds*. 20 How. (U. S.) 343.

In the last named case, at pp. 370 and 371, Justice Clifford says : " When the settlement was made, the new notes were given in payment of the prior indebtedness, and the collaterals previously held were surren-

dered to the defendant, and the time of payment was extended and definitely fixed by the terms of the notes, showing an agreement to give time for the payment of a debt already overdue, and a forbearance to enforce remedies for its recovery; and the implication is very strong, that the delay secured by the arrangement constituted the principal inducement to the transfer of the bill. Such a suspension of an existing demand is frequently of the utmost importance to a debtor; and it constitutes one of the oldest titles of the law under the head of forbearance, and has always been considered a sufficient valid consideration. *Elting* v. *Vanderlyn*, 4 Johns. 237; *Morton* v. *Burn*, 7 Ad. & E. 19; *Baker* v. *Walker*, 14 M. & W. 465; *Jennison* v. *Stafford*, 1 Cush. (Mass.) 168; *Walton* v. *Mascell*, 13 M. & W. 453; Com. Dig. action assumpsit, B. 1; *Wheeler* v. *Slocum*, 16 Pick. 52; Story on Prom. Notes, §186, and cases cited; the surrender of other instruments, although held as collateral security, is also a good consideration; and this, as well as the former proposition, is now generally admitted, and is not open to dispute. *Depeau* v. *Waddington*, 6 Whar. 220; *Hornblower* v. *Proud*, 2 B. & A. 327; *Ridout* v. *Bristow*, 1 Cromp. & J. 231; *Bank of Salina* v. *Babcock*, 21 Wend. 499; *Young* v. *Lee*, 2 Ker. 551."

Taking the allegations of said special plea to be true, as therein pleaded, it seems to me, that the plaintiff under the allegations of said plea must be considered and held to be a *bona fide* holder, for valuable consideration, of the promissory note sued upon; and that the matters of defense, pleaded in bar of the plaintiff's right to recover, as pleaded, are not sufficient in law, if true, to bar the plaintiff's right of recovery upon the promissory note, sued upon and in the declaration mentioned.

The municipal court of Wheeling therefore did not err in sustaining the plaintiff's demurrer to said special plea.

In 1 Parsons on Notes and Bills at pages 201, 202, he says: "A note given by a party in satisfaction of a lia-

bility, from which he was discharged in ignorance of the *facts* which constituted such discharge, cannot be enforced against him, though he may have had the means of knowing these facts;" and he cites in note (r), on page 202, *Bell* v. *Gardner*, 4 Man. & G. 11 ; *Bullock* v. *Ogburn*, 13 Ala. 346 ; *Mercer* v. *Clark*, 3 Bibb 224.

The case of *Bell* v. *Gardner* was an action by the payee against the maker of a promissory note ; and in that case it was held, as stated in the syllabus, that " A negotiable security, given by a party in satisfaction of a liability, from which he was discharged in law,—in ignorance of the facts which constituted such discharge, cannot be enforced against him, though he may have had the *means* of knowing these facts. Therefore, when a bill of exchange, endorsed by A. for the accommodation. of the drawer, was afterwards altered in .a material point, with the consent of the drawer, and when the bill was at maturity, B., the then holder, made a demand upon A., who ignorant of the alteration, though he had ample means of knowing it, gave B. a promissory note for the amount of the bill and expenses, held that it was a good defence to the action of the note by B., that at the time A. gave it, he was not in fact aware of the alteration of the bill.

The case of *Mercer* v. *Clark*, 3 Bibb, was also an action by the payee against the maker of the note. The case cited in 13 Ala. I cannot now see, as the book is not before me, and is not in the State library ; but my recollection, though not distinct, is, that the case therein cited is also an action by the payee against the maker of the note.

It seems to be " a general principle of the law merchant, that, as between the immediate parties to a negotiable instrument—parties between whom there is a privity—the consideration may be enquired into ; and that, as to them, the only superiority of a bill, or note, over other unsealed evidence of debt is, that it *prima facie* imports a consideration." 1st vol. Daniel on Ne-

gotiable Instruments, p. 576 sec. 769. " The same rule, which admits enquiry into the consideration of negotiable paper between the original payer and payee, extends to admit such enquiry in any suit between parties, between whom there is privity. That is to say, between the immediate parties to any contract evidenced by the drawing, accepting, making or endorsing a bill, or note. it may be shown, that there was no consideration, or that the consideration has failed, or a set-off may be pleaded : but as to other parties *remote* to each other none of these defenses are admissible." 1st vol. same author, page 135 sec. 174.

It is said by Mr. Daniel in the 1st volume of his said work at page 163 : "If the consideration of the original bill or note be illegal, a renewal of it will be open to the same objection and defense ; and if the original instrument was obtained by fraud, a renewal of it by the original parties, without knowledge of the fraud, would stand upon the same footing ; and he cites *Sawyer* v. *Wisnell,* 9 Allen 39 ; *Holden* v. *Cosgrove,* 12 Gray 216 ; *Scudder* v. *Thomas,* 35 Ga. 364.

These cases and the principles therein decided, I do not think, affect or oppose the conclusion, to which I have arrived, as to the sufficiency of said plea. But I suggest, but do not decide, that said special plea is defective on other grounds, if the matters pleaded or attempted to be pleaded were a good defense, if properly pleaded ; but it does not aver or allege, that said original note was altered, as therein stated, without the knowledge or consent of either of them, Edwards or Lockwood. The plea does not allege or aver, that the defendants, and each of them, were ignorant at the time of the endorsing of said last notes of said alteration ; and that they then and there believed, that said first note remained unaltered ; and that they, and each of them, endorsed said two last notes for no other consideration whatever ; and that they, nor neither of them, ever assented or agreed to said alteration of said first note.

1878
June Term.

Bank of Ohio
Valley
v.
Lockwood *et al.*

Syllabus 3

Furthermore it seems to me, that if these matters pleaded are a good defense in bar defendants' plea shows, if it shows any legal defense, that plaintiff never had any cause, of action and that the same matters were properly admissible as evidence under the plea of *non assumpsit.* The plaintiff is not prejudiced by the judgment on the demurrer to said plea, because he could, and as the record shows, did make his defense set up in said special plea before the court without objection, and got the benefit thereof in the cause. And according to the principles decided in the case of *Merchants and Mechanics Bank of Wheeling* v. *Evans & Dewey,* 9 W. Va. ; and other cases the court should not reverse the judgment in the cause, because the court erred in overruling said demurrer, it clearly appearing that the defendants were not thereby prejudiced.

*As to the bill of exceptions No.* 1. No error is shown or suggested, in argument before us in the rulings and opinion of the court, mentioned in the bill of exceptions. As to, the formality of making protest and preparing the certificate thereof it seems, it generally comprises three distinct steps: 1. Making the presentment and demand of payment. 2. Noting the dishonor; and 3 extending the protest. According to Daniel on Negotiable Instruments vol. 2, pp. 10,11. "As soon as the presentment and demand have been made, or at some seasonable hour during the same day, the notary makes a minute on the bill, or in his book of registry, consisting of his initials, the month, the day, the year, the refusal of acceptance or payment, and his charges of protest. This is the preliminary step towards the protest, which may be afterwards written out in full, extended, as the elaboration of the minutes is termed, and it is called 'noting.' " Noting, it was said in an early case, "is unknown to the law, as distinguished from the protest, and has grown into practice within these few years." But it is now quite well established in England, Scotland and the United States, that noting is a kind of

1878
June Term.

Bank of Ohio
Valley
v.
Lockwood *et al.*

initial protest, as Thompson aptly terms it, not self sufficient as a protest, but sufficient in the meantime, if the certificate of protest is regularly extended afterwards. * * This extension may be made at any time. As said by Lord Kenyon: "If the bill was regularly presented, and noted at the time, the protest might be made at any future period; and it is well settled to this effect in the United States. The extension may be made even after the suit brought or after trial has commenced; and when made it is ante-dated as of the day, when the initial protest is made."

Parsons on Notes and Bills, 1st vol. pp. 644, 645, 646, says: "Noting the protest means simply marking (usually and properly on the paper itself) the fact and time of the demand, the charges of minuting, and sometimes the place and the name of the parties, of whom the demand is made, and it is signed by the initials of the notary. This is sometimes said to be not known to the law. But the notary fills out his protest afterwards (and it is only a fuller statement of all these facts), or may testify in court as to the facts by using the noting to revive his recollection. The notary, by usage, makes the demand, and gives notice of non-payment to all prior parties, * * nor will any mere verbal mistake or error in the notarial certificate vitiate it, if the protest and noting were properly made. See also note (16) to said page 644 and authorities there cited and note (u) at said page 646.

No error in the ruling of the court, mentioned in said bill of exceptions No. 1, being pointed out to us, and we seeing none, of which the said defendants can complain here, the defendants' fourth assignment of error which is: "The court should not have permitted the protest to have been offered in evidence," is overruled.

As to the defendants second and fifth assignment of error, which are, that "2d; the court should have sustained the defendants' motion for a new trial, it appearing that the cause had been closed, and that a day Syllabus 3

had elapsed, and the court opened the matter and heard additional evidence ; 5th, the court should have granted a new trial on account of the *surprise,* new testimony having been admitted after the cause had been entirely closed."

· I consider these two assignments of error together, because they are alleged errors arising upon the defendants' said bill of exceptions No. 3.

In the case of *McDowell's ex'r* v. *Crawford,* Judge Moncure, in his opinion, says : . " Although the practice of our courts has been liberal in allowing parties, after their evidence is closed, to recall witnesses for the purpose of supplying facts omitted from inadvertance ; and although I think such permission should be given, , whenever there is no ground to suspect improper practice, the object being to elicit the truth, and secure the attainment of justice; yet I am aware, that the judge, before whom a case is tried, must necessarily have large room for discretion on this subject, and I think an appellate court should seldom interfere with its exercise." These views of Judge Moncure are reasonable and correct, as I think. See also *Howell* v. *The Commonwealth,* 5 Gratt. 664. See also the case of *Hunter* v. *Snyder's ex'r,* 11 W. Va. 198.

In the last named case Judge Haymond, who delivered the opinion of the court, and in which opinion Judges Moore and Johnson concurred, Judge Green not sitting in the case, said : "When the plaintiff gives evidence to the jury and says he rests his case, and the defendant tenders a demurrer to the evidence then given to the jury, the court may, in the exercise of a sound discretion, permit the plaintiff, to give additional relevant evidence to the jury, unless it is satisfied, that the failure to introduce it was not owing to mere inadvertance of counsel . or other sufficient cause, and refuse to compel the plaintiff to join in the demurrer to the evidence given to the jury, before the additional evidence was admitted. In the case at bar the plaintiff had omitted to prove the ex-

ccution by the testator of the promissory note given in evidence, or to give to the jury evidence tending to prove that fact, before he announced that he rested his case ; and it is not difficult to see, that the defendant, in that state of the evidence, sought to avail himself of the benefit of that omission by his demurrer."

In *Huffman* v. *Alderson's adm'r*, 9 W. Va. 616, it was held by this court, that " After a case had been submitted to the jury, the court may permit written evidence, attached to the pleadings, which was inadvertantly omitted to be read to the jury, to be read in the argument, and such reading of it is no ground for discharging the jury and continuing the case, unless it operated to as a surprise to the opposite party." In this case Judge Green, in delivering the opinion of the court, at page 632, says : " The record fails to show, that he was taken by surprise, or that he had any evidence to rebut this affidavit. This affidavit had been filed more than three months with the papers of the suit ; and if the defendant wished to rebut it, his witnesses should have been summoned for that purpose ; but the record does not show, that he had summoned any witnesses for that purpose, or if any had been summoned, that they were not then present. I cannot see, that the court erred in refusing to continue the case."

In the case of *Browning, adm'v*, y. *Huff*, 2 Bailey 174, it was held, that " when the plaintiff omits to produce evidence of a fact, necessary to enable him to maintain his action, either through accident, or an impression that formal evidence of that fact was not essential, it is in the discretion of the court to permit him to introduce it, after he has closed his case, and even after non-suit moved for, argued and determined against him." In this case Judge O'Neal at page 179, says: " In cases like the present, it has been a long and well settled practice to allow a plaintiff, when evidence essential to support the issue had been omitted accidentally, or from supposing *that* before the court sufficient, to adduce it, even

after the evidence had been closed, a motion for a non-suit made and argued, and even the opinion of the presiding judge pronounced in favor of the motion. The application of this rule of practice, must always be left to the discretion of the presiding judge; though it ought never to be allowed to surprise, or work any delay, or loss, to the defendant. I am however unable to see, that the discretion allowed to the presiding judge was improperly exercised here: for, if the plaintiff could without delaying the court, or the party, make out a fact, on which the proceedings themselves informed the defendant, the plaintiff did rely, and which she had omitted to prove, from supposing that in point of law it could not be questioned, surely she ought to have been permitted to do so. The attainment of speedy justice is one great object of a suit at law; and it would be a bad way of attaining this end, to say to a party situated as the plaintiff was in the court below, your case must fail, and you must begin *de novo*, because you did not offer evidence before you closed, which you can now obtain in a few moments." *Poole* v. *Mitchell*, 1st Hill, (S. C. Law) side page 405 and top page 260.

The case at bar involves to a very great extent the principles decided in the said case of *Browning* v. *Huff* and announced by Judge O'Neal. It does not appear from the bill of exceptions, that the defendants claimed before the court below, that they were taken by surprise by the introduction of said certificate of incorporation as evidence, or that its introduction would work injustice to them, unless time was given them to introduce other evidence to rebut or invalidate said certificate of incorporation—no affidavit was filed, or offered, before the court showing any of these things.

Under this state of facts, and the authorities above cited bearing upon the subject, I do not feel authorized to determine, that the court below erred in its rulings and judgment in said third bill of exceptions. The defendants' said second and fifth assignments of error

based upon said third bill of exceptions, are overruled as not being well founded.

In considering said special plea I have held, that the matters set up in it would not constitute a bar, if properly and well pleaded under the authorities and principles referred to and stated; and this conclusion determines of course, that there was and is no error in the judgment of the court upon the facts proven in the cause before the court. It is true, that it is stated as a fact proved, that defendant, Lockwood, never received notice of the protest of the note, on which this suit is founded, but under the facts proved by the plaintiff as to notice to said Lockwood it is not material, whether he actually received the notice or not. Parsons on Notes and Bills, vol. 1, pages 477, 478, and notes.

It is argued by the counsel for the plaintiff below, that neither of the two notes, last delivered to the bank, were renewals of the first altered note; but that each of said two last notes were discounted by the bank, and the proceeds applied by the maker, who received them, to the payment and satisfaction of the note then due, or overdue, and the note so paid and satisfied was delivered up by the bank, endorsed by the bank paid, &c.; and the case of *Fisher, President of the Farmers' Bank of Lansinburg,* v. *Daniel Marvin et al.,* 47 Barb. 159, is cited in support of this position.

The syllabus and opinion of a majority of the court (the court being composed of three persons) seem to support and sustain that position. The syllabus of the case is: "The discounting of a new note, and the application of the proceeds realized from it to the payment of a former note, extinguishes the old debt, and creates a new one. Such a transaction is not a mere change of securities, the taking of a new note in the place of an old one; but a discount, and a payment of money, upon the strength of the new security, by means of which the old obligation is discharged, given up and surrendered, so as to render it ineffective for any purpose."

1878
June Term.

Bank of Ohio
Valley
v.
Lockwood *et al.*

The facts certified in this case make a stronger case in my judgment, than the case in 47th Barbour as therein stated, in favor ot the position of plaintiff's counsel as to the first note being paid and satisfied in part with the proceeds of the second and the residue with other funds, and the second paid and satisfied in part with the proceeds of the third and the residue with other funds, each note so paid and satisfied being delivered up to the maker at the time of such payment thereof, as being paid. The facts, certified as proven in this case, look to me, that neither of the two last notes was delivered to and received by the plaintiff in renewal of the first or altered note ; but that the bank by its cashier refused to receive the second note in renewal of the first, as requested by the maker, but discounted said second note and delivered by its cashier the proceeds, minus the discount, in the shape of a check, to the maker, the same as done, when the first note was discounted ; and he (the maker) with said check and other funds paid the first note to another officer of the bank, whose duty it was to receive payment ; and at the time of such payment the said first note was delivered up to the maker, as being paid. The plaintiff by its cashier, it also appears, refused to receive the third note in renewal of the second ; but the same was discounted by the plaintiff, and the proceeds, minus the discount, were delivered to the maker by the plaintiff's cashier, in the shape of a check, the same as before ; and the maker took the check, and with it and other funds paid the second note to the same officer, to whom he paid the first note ; and thereupon said officer delivered the said second note to the maker, stamped paid, and as being paid. The facts however more fully appear in the certificate of facts certified, which are hereinbefore set forth. It now seems to my mind, that neither of the two last notes was received in renewal, from the facts certified, but that each of the two last notes were discounted ; and the first and second notes were in fact paid and satisfied. But I do not now decide that question, as, under the

view I have hereinbefore taken and stated in this case, I regard the question as being immaterial. The counsel for the defendants below seems to admit in his brief, that if the new notes were actually discounted by the plaintiff, it would have been sufficient consideration as to the endorsers.

For the foregoing reasons I am of opinion, that there is no error in the judgment of the municipal court of Wheeling, rendered in this cause on the 10th day of January, 1877; and that the said judgment must be affirmed, with costs and damages according to law to the defendant in error against the plaintiffs in error.

THE OTHER JUDGES CONCURRED.